**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CR-25-295-R** |
| | ) | |
| **TOK CHIN KIM,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE**

**COMES NOW** Defendant Tok Chin Kim, by and through counsel of record, J. Patrick Quillian, and submits this sentencing memorandum to assert that a sentence of five (5) years' probation would reflect the nature and circumstances of the offense, his history and characteristics, and be "sufficient, but not greater than necessary" to comply with the statutory directives of Tit. 18 U.S.C. § 3553(a). The sentence recommended herein represents a downward variance from the guideline range calculated in the Presentence Investigation Report in this matter (Doc. 33) (the "PSR"), which is correctly calculated at 51-63 months. *See* PSR, ¶68.

## I. Legal Framework

After *United States v. Booker*, 543 U.S. 220 (2005), sentencing requires a two-step process. *See United States v. Verdin-Garcia*, 516 F.3d 884 (10th Cir. 2008). First, the district court must consult the United States Sentencing Guidelines and correctly calculate the recommended sentencing range, then consider the factors mentioned in Tit. 18 U.S.C.

§ 3553(a) to determine a reasonable sentence. *Id.*

## II. Factors under 18 U.S.C. § 3553(a)

### A. The Need for the Sentence Imposed to Promote Certain Statutory Objectives: Tit. 18 U.S.C. § 3553(a)

#### 1. The History and Characteristics of Mr. Kim and the Nature of the Offense.

The PSR accurately and thoroughly discusses the plethora of abuse to which Mr. Kim was subjected throughout his childhood, and it is unnecessary to go back into each instance for the Court to understand that he had a tragic upbringing. In addition to this abuse, Mr. Kim's father isolated him from his peers, prohibiting him from all extracurricular activities or contact with friends outside of school. This dark childhood led Mr. Kim into adulthood with little social skills and few social opportunities. This pushed him towards the internet, and eventually pornography and the criminal conduct in this matter.

Despite the adversity Mr. Kim faced growing up, he was able to graduate high school, obtain a college and associate's degree, then maintain steady employment up to the point of his arrest in this case. *See* PSR ¶¶ 82, 83. More importantly, Mr. Kim has never been accused of acting inappropriately with a minor. Since his arrest in this matter, he has begun treating his mental health issues and feels that he is progressing. Moving forward, Mr. Kim wants to continue mental health treatment and ensure he remains stable so that he does not reoffend.

#### 2. The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment.

A sentence of (5) years' probation would be a just, significant punishment under the circumstances. It would be a significant sentence considering Mr. Kim has never served a criminal sentence in his life and would put the Court directly in Mr. Kim's life for five (5)

years, with the sex offender registry most likely continuing to place restrictions on his life afterward. The leniency this sentence would show Mr. Kim would be just because it would recognize that his issue is with the pornography itself and that he does not pose a threat of committing a "contact crime" on minors, which will be discussed at greater length below. Furthermore, this leniency would also acknowledge the abuse and isolation Mr. Kim experienced growing up, which certainly played a large role in his criminal conduct in this case.

**3. To Afford Adequate Deterrence and Protect the Public from Further Crimes by Mr. Kim.**

**a. Mr. Kim Does Not Pose a Danger to Minors**

Mr. Kim's lack of any allegation with respect to minors indicates that he poses no danger to children, and he does not possess the characteristics of those who do. Michael Seto, a prominent expert in the field of pedophilia, engaged in a detailed examination of documented child pornographers in 2005. The goal of this examination was to determine what factors predict the likelihood that child pornography offenders would later commit a contact sexual offense. *See* Michael C. Seto and Angela W. Eke, *The Criminal Histories and Later Offending of Child Pornography Offenders,* Sexual Abuse: The Journal of Research and Treatment, Vol. 17 No. 2, April 2005. The study followed 201 child pornography offenders for a period of years after their release from prison. Seto and Eke found as follows:

> "Possession of child pornography is a valid indicator of pedophilia . . ." but,
>
> "[o]nly one of the offenders with only child pornography offenses committed a contact sexual offense in the follow-up period . . . our finding does contradict the assumption that all child pornography offenders are at very

high risk to commit contact sexual offenses involving children."

*Id.* at 202, 208. Based on this and other findings in their study, Seto and Eke concluded that the valid indicators for later commission of a contact offense were **prior criminal history and prior instances of contact sexual abuse**. *Id.* As discussed above, Mr. Kim has no prior instances of any sort relating to improper contact with children, and no criminal history.

**b. The Public Will be Protected while Mr. Kim is on Probation.**

The significant period of probation recommended herein would protect the public. First, there are numerous conditions of probation that the Court can impose that will both encourage rehabilitation as well as restrict Mr. Kim's life to ensure he doesn't reoffend. The Court can intervene if any of those conditions are violated. Mr. Kim will have to additionally comply with the sex offender registry which, like probation, provides a fast track to incarceration in the event he does not comply. The conditions of probation and the registry will not only help rehabilitate Mr. Kim but will also deter him from committing any new crimes.

## III. USSG §2G2.2 Yields Unreliable Guideline Ranges

The District Court is permitted to deviate from the calculated guideline range "based solely on policy considerations, including disagreements with the guidelines." *See Kimbrough v. United States,* 555 U.S. 338, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). The Supreme Court emphasized the Court's ability to do this in *Spears v. United States*, 555 U.S. 261, 129 S.Ct. 840, 172 L. Ed. 596 (2009) in noting that policy deviations from the Guidelines need not be based on a defendant's particular circumstances; all that is needed to justify the

variance is the sentencing court's disagreement with the guidelines. *See Id.* at 263-64.

### A. The United States Sentencing Commission's Reports on Child Pornography Sentencing.

In October 2021, the United States Sentencing Commission ("USSC") issued a report to Congress that discusses in detail the federal sentences of child pornography offenders who are not alleged to have produced child pornography as part of their criminal conduct. *See U.S. Sent'g Comm'n Report to the Congress: Federal Sentencing of Child Pornography: Non-Production Offenses Child Pornography Offenses* (Oct. 2021) (the "2021 Report"). This report followed up on a previous report to congress in 2012 which analyzed and ultimately criticized the child pornography guideline. *See U.S. Sent'g Comm'n Report to the Congress: Federal Child Pornography Offenses* (Dec. 2012) (recommending that congress give the USSC the authority to amend the child pornography guideline to account for, inter alia, changes in technology and offense behavior). Because Congress did not implement any of the previously requested changes to the child pornography guideline, the 2021 Report seeks to provide Congress with updated data for non-production offenders. *See* 2021 Report, *supra,* at p. 2.

#### 1. The child pornography guideline has not kept up in advancements with technology.

One of the key findings by the USSC in the 2021 Report is that "§2G2.2 contains a series of enhancements that have not kept pace with technological advancements[]" noting that "[f]our of the six enhancements-accounting for a combined 13 offense levels-cover conduct that has become so ubiquitous that they now apply in the vast majority of cases[.]" 2021 Report, p. 4. Specifically, the USSC found that in fiscal year 2019, 95% of non-

production offenders received enhancements for the use of a computer and for the age of the victim depicted. *Id.* Similarly in FY '19, the enhancement for images depicting masochistic conduct etc. applied 84% of the time, and the enhancement for having 600 or more images applied 77.2% of the time. *Id.* In fact, the USSC found that the median number of images for non-production offenders in FY'19 was 4,265. *Id.* In line with the USSC's criticisms, Mr. Kim's offense level was increased nine (9) points by three of these frequently applied enhancements. Were these redundant enhancements not applied, Mr. Kim's guideline range would be only 18-24 months.

**2. Recent sentences indicate the Courts' distrust in the child pornography guideline.**

As stated in part above, the child pornography guideline enhancements continue to apply in a majority of cases despite being implemented to punish the more serious and culpable offenders. 2021 Report, p. 5. Because of this, the average guideline minimum for non-production defendants has increased significantly over time. *Id.* Not surprisingly, Courts have continued to increasingly give downward variances in non-production child pornography cases, with 59% of non-production child pornography offenders receiving downward variances from the guideline range in FY '19. *Id.*

Further discrediting the child pornography guideline is the fact that Courts in FY 2019 imposed a broad range of sentences upon similarly situated (from a guideline perspective) non-production child pornography defendants. 2021 Report, pp. 54-57. Specifically, there were 119 child pornography offenders who had the same guideline range. *Id.* at 54-55. Of these 119, 81.5% received below-guideline sentences. *Id.* The range of sentences these defendants received, however, ranged anywhere from probation to 228 months. *Id*. at 55.

These examples show that the Courts are clearly focusing more on non-guideline factors in sentencing child pornography defendants.

**III. CONCLUSION**

Mr. Kim accepts responsibility for his actions. While he recognizes the seriousness of the offense and the need for punishment, we submit that a downward variance based upon the arguments herein make a sentence of five (5) years' probation would be appropriate under the circumstances and in line with the statutory goals of sentencing.

Respectfully submitted,

/s/ J. Patrick Quillian
J. Patrick Quillian, OBA#20811
PHILLIPS, COVENTON, QUILLIAN & BANNER, PLLC
1900 Northwest Expressway, Suite 601
Oklahoma City, Oklahoma 73118
Telephone: (405) 418-8888
Facsimile: (405) 260-9573
Email: dustinsphillips@gmail.com
*Counsel for Defendant*

**Certificate of Service**

I, J. Patrick Quillian, hereby certify that on the 4th day of June, 2026, a copy of the attached document was electronically transmitted to all ECF registrants who have entered their appearance in the above-referenced matter, including Assistant United States Attorney Elizabeth Joynes.

s/ J. Patrick Quillian
J. Patrick Quillian, OBA#20811